IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION



KEITH CUNNINGHAM                §
                                §
            Plaintiff,          §
                                §
v.                              §        Civil Action No. 5:20-CV-1049
                                §
PROFESSIONAL         SECURITY   §
CONSULTANTS, INC.,              §
                                §
            Defendants.         §
                                §

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

For his Original Complaint against Defendant Professional Security Consultants, Inc., Plaintiff Keith Cunningham shows the following:

### Introduction

1.      This is an action for retaliatory discharge under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act (TCHRA).  Plaintiff Keith Cunningham was formerly employed by Defendant Professional Security Consultants, Inc. as Assistant Director of Security at The Rim location in San Antonio, Texas.  Plaintiff opposed and complained of racism and sexism committed by his Site Director, Brian Jones.  Plaintiff was discharged because he opposed and complained discrimination in violation of Title VII and the TCHRA.  Plaintiff brings this action for damages.

**Parties**

2.     Plaintiff Keith Cunningham is an individual residing at 17410 Ranchview Estates Drive, Elmendorf, Texas 78112.  He may be served with papers in this case through the undersigned counsel.

3.     Defendant Professional Security Consultants, Inc. is a corporation organized under the laws of the State of California.  It maintains its principal place of business at 11454 San Vincente Blvd., Los Angeles, California 90049.  It may be served with process through its registered agent in Texas, Paracorp Incorporated, at 3610-2 N. Josey Lane, Suite 223, Carrollton, Texas 75007.

**Jurisdiction and Venue**

4.      The Court possesses subject matter jurisdiction over this case under 28 U.S.C. Section 1331 because Plaintiff brings a claim under Title VII of the Civil Rights Act of 1964.  The Court possesses supplemental jurisdiction over Plaintiff's TCHRA claim under 28 U.S.C. Section 1367.  The Court possesses personal jurisdiction over Defendant because Defendant is registered to do business in Texas and because Defendant maintains business offices in Texas and constantly does business in this State.  Venue is proper in the Western District of Texas because all of the acts and omissions giving rise to Plaintiff's claims occurred in Bexar County.

**Factual Background**

5.     Plaintiff was hired by Defendant on or about August 7, 2019 as the Assistant Director of Security at The Rim Shopping Center in San Antonio, Texas.  He was hired by Brian Jones (Site Director for Defendant) and Chris Oviat, the Property Manager for The Rim Shopping Center.

6.      Shortly after he commenced employment with Defendant, one of Plaintiff's employees—Martin Rodriguez—brought some concerns to my attention.  Martin complained to Plaintiff after overhearing Brian call him "illiterate" and "dumb."  Other Hispanic employees likewise complained about treatment at the hands of Jones as well as comments made by Jones. Plaintiff brought these comments to the attention of Jones with the anticipation that Jones would modify his behavior and possibly apologize to Rodriguez.  However, Jones's response was:  "Well he is dumb.  He has a 6th grade education."

7.      On multiple occasions, Plaintiff overheard Jones make racist comments.  For example, on one occasions, Jones said, "Those Dallas Mexicans are lazy and all they want are handouts, but those San Antonio Mexicans know how to work and know their place."  Plaintiff also heard Jones make sexist comments such as, "Women are annoying, they are worthless drivers, they are complainers, and they don't know their place."  These particular comments were made in reference to a specific female officer.  Jones also called two of Plaintiff's officers, Gianni Quintanilla and Travis LNU "fat" on a regular basis.

8.      On or about August 27, 2019, Plaintiff complained to Regional Manager Justin Richards over the phone and by email.  Plaintiff followed the phone call up with an email so that his complaint was in writing.  Plaintiff received a call from Richards the following day.  Richards advised Plaintiff that he was going to investigate.   A few days after Plaintiff made his complaint, Gianni—who Plaintiff supervised—asked me Plaintiff for Richards' phone number.  When Plaintiff asked why he needed it, Gianni told Plaintiff that he felt uncomfortable around Jones.  He elaborated and said that Jones would frequently comment on his "boyish looks," would call him "bear," and regularly called him on his personal cell phone, which was not standard

3

practice. Plaintiff advised Gianni that he should speak to Richards about this. Gianni was unaware that Plaintiff had already complained about Jones at this time.

9.      After Plaintiff made his complaint on August 27, Jones started to avoid Plaintiff. This seemed unusual to Plaintiff at the time, and Plaintiff has since learned that Jones learned of Plaintiff's complaint. However, Plaintiff soon recognized that Jones had set out on a campaign of retribution against Plaintiff for reporting to Richards. On or about September 1, one of Plaintiff's employees—Joshua Medina—overheard Jones say that Plaintiff was worthless and that he wanted to fire Plaintiff. Then two other employees, Martin and Gianni, reported to Plaintiff that they heard Jones say the same thing. Plaintiff received a call from Justin on or about that week. Richards advised Plaintiff that they were still investigating.

10.      On September 5, Plaintiff was working as usual. Jones approached Plaintiff and told him that they needed to talk. Jones then proceeded to ask Plaintiff questions about Martin Rodriguez. Jones said, "Have you talked to Martin about anything? About me?" Plaintiff responded, "Yes, Martin has talked about you." Plaintiff told Jones that Martin approached him and told him that he did not like when he called him illiterate. Jones responded, "I never said illiterate, I said computer illiterate." Plaintiff then replied, "No, you said he was illiterate and that he had a 6th grade education." Jones became upset and said, "You know what, I'm going to call corporate." Jones proceeded to call corporate in Plaintiff's presence. When Justin Richards answered the phone, Jones told Richards he was upset that "they" are "talking trash" about him. Plaintiff left shortly thereafter because he needed to get back to work.

11.      Plaintiff went to patrol the grounds with Gianni. Around 45 minutes after his last conversation with Jones, Jones summoned Plaintiff to go to the management office. Plaintiff met with Chris Ovieto (Property Manager at Rim) and Jones. Ovieto advised Plaintiff that there was

no scenario where Jones gets fired and Plaintiff remains employed.  Ovieto ordered Plaintiff to go home even though he did not represent Defendant.

12.     After Plaintiff left, he met his wife nearby at Palladium for a pre-arranged movie date.  This theater is located near The Rim Shopping Center.  However, it is not actually on the Rim property.  Shortly after Plaintiff arrived at his car, which was still parked in the Rim garage that he typically parked in, he observed Gianni approach.  And shortly thereafter, Joshua Medina also arrived.  Plaintiff advised them that he was going to see a movie and that their presences was unnecessary.  Shortly thereafter, Jones showed up and was very angry.  He said, "You're not supposed to be on this property."  Gianni, who was one of the guards summoned, later said, "Hey man, Brian is telling me to arrest you and says you're banned."  No one had previously told Plaintiff that he was banned.  They advised Plaintiff to get his car and to move it to the Palladium property.  Even after he did this, the guards continued to follow Plaintiff per Jones' orders.  An off-duty law enforcement who was performing security for the Palladium approached.  He ordered the security officers to retreat because it was not Rim property.

13.     Plaintiff entered the movie theatre with his wife.  Plaintiff thereafter received a call from Richards with Mayura Rao (Richards' boss) on the line.  Richards stated that Plaintiff was suspended, that there was an investigation pending, and that he was not welcome on the property.  Plaintiff advised Richards that he was not on property.  A while later, Plaintiff received a phone call from Rao and Richards.  Rao advised Plaintiff that he was terminated and banned from the property for five years.  Plaintiff also received a Notice of Restriction from The Rim property along with his final paycheck.

### Causes of Action:  Retaliatory Discharge under Title VII and the TCHRA

14.     Plaintiff re-alleges and reincorporate paragraphs 1 through 13 supra.

15.     Defendant has at all times relevant to this lawsuit been an employer within the meaning of Title Vii and the TCHRA in that it has employed more than 15 employees in each of 20 or more calendar weeks in calendar years 2018 and 2019. Plaintiff was likewise an "employee" of Defendant.

16.     Plaintiff became aware of and witnessed discriminatory conduct committed by his supervisor, Brian Jones. Plaintiff opposed this unlawful conduct, including by reporting the discrimination to the Regional Manager, Justin Richards. By Defendant's own subsequent admission to the EEOC, Jones was informed of Plaintiff's complaint. Thereafter, Jones commenced a campaign of retaliation against Plaintiff that culminated in Plaintiff's discharge from employment. Plaintiff avers that but for his protected activity, he would not have been discharged when he was.

17.     As a result of his discharge from employment, Plaintiff has suffered lost wages and benefits and will likely to continue suffering these damages in the future. Additionally, as a result of Defendant's retaliatory conduct, including his termination from employment, threats of arrest, and Jones' orchestration of the banning of Plaintiff from the property, Plaintiff has suffered emotional distress, mental anguish, humiliation, embarrassment, damage to his reputation, and generalized loss of enjoyment of life. Plaintiff also will establish that Defendant acted with malice, or at least with reckless indifference towards Plaintiff's legally-protected rights. As such, Plaintiff is entitled to an award of punitive/exemplary damages. Finally, because Plaintiff has had to retain legal counsel to vindicate his legal rights, Plaintiff is entitled to an award of attorney fees.

### Jury Trial

18.     Plaintiff requests a trial by jury.

## Prayer

19.   Plaintiff prays that, upon final judgment, he be awarded the following:

a.      All unpaid wages, including unpaid overtime incurred in the three years preceding
        the filing of this lawsuit;

b.      An equal amount in liquidated damages;

c.      Attorney fees and costs;

d.      Pre- and post-judgment interest;

e.      All other relief to which Plaintiff is entitled.



                                    Respectfully submitted,



                                    /S/ MICHAEL V. GALO, JR.
                                    Michael V. Galo, Jr.
                                    State Bar No. 00790734
                                    GALO LAW FIRM, P.C.
                                    4230 Gardendale, Bldg. 401
                                    San Antonio, Texas 78229
                                    Telephone: 210.616.9800
                                    Facsimile: 210.616.9898
                                    mgalo@galolaw.com
                                    ATTORNEY FOR PLAINTIFF
                                    KEITH CUNNINGHAM